# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:10CV126-RLV-DSC

| | |
|---|---|
| LISA L. JOLLY,<br>       Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br>       Defendant. | )<br>)<br>)<br>)   **MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #9) and "Memorandum in Support ..." (document #9-1), both filed February 24, 2011, and the Defendant's "Motion for Judgment on the Pleadings" (document #11) and "Memorandum in Support... " (document #12), both filed April 28, 2011.  This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Judgment on the Pleadings be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for a period of disability and disability insurance benefits ("DIB") on January 11, 2008, alleging that she became disabled on May 2, 2006. Plaintiff's application was denied initially and on reconsideration, and a hearing was held on July 16, 2009 (Tr.

6-51).

On November 3, 2009, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr.5-21). In his decision, the ALJ found that Plaintiff last met the insured status requirements on June 30, 2008 and had not engaged in substantial gainful activity since her alleged onset date through her date last insured.[1] The ALJ also found that Plaintiff suffered degenerative disease of the knees, degenerative disease of the lumbar spine, and residuals of a right ankle injury, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform the full range of sedentary work (Tr. 14).[3] The ALJ also found that Plaintiff could not perform her past relevant work, and that she was a "younger individual," as that term of art is used for Social Security purposes, with a high school education.[4]

The ALJ then applied Medical-Vocational Rule 201.27 to determine that the Plaintiff was not disabled through her date last insured. (Tr. 18).

By notice dated July 2, 2010, the Appeals Council denied Plaintiff's request for further administrative review.

---

[1] Because Plaintiff acquired sufficient quarters of coverage to remain insured for DIB only through June 30, 2008, in order to establish disability for DIB purposes, she had the burden to show that she was disabled on or before that date. See 20 C.F.R. §§ 404.101, 404.130-404.131.

[2] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[3] Sedentary work involves lifting no more than 10 pounds at a time and occasional lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R.§ 404.1567(a). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Id. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. Id.

[4] The record shows that Plaintiff was 45 years-old on the date of the ALJ's decision.

Plaintiff filed the present action on September 2, 2010. In her four-page Motion and brief, Plaintiff assigns error generally to the ALJ's evaluations of her RFC and her subjective complaints. "Memorandum in Support ..." at 2-3 (document #9-1). The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

3

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became "disabled" as that term of art is defined for Social Security purposes at any time prior to her date last insured of June 30, 2008.[5] It is not enough for a claimant to show that she suffered from severe medical conditions or impairments which later became disabling. The subject medical conditions must have become disabling prior to the date last insured. Harrah v. Richardson, 446 F.2d 1, 2 (4th Cir. 1971) (no "manifest error in the record of the prior administrative proceedings" where Plaintiff's conditions did not become disabling until after the expiration of his insured status).

Plaintiff's first assignment of error concerns the ALJ's determination that Plaintiff had the RFC to perform the full range of sedentary work. Plaintiff accuses the ALJ of "cherry picking" the medical record for notes supporting his decision, document #9-1 at 2. A review of the ALJ's decision shows, however, that the ALJ thoroughly examined the medical record.

---

[5]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
  inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
  Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

The ALJ noted that Plaintiff first saw Dr. Mario Sacchetti in January 2007 for bilateral knee pain. Plaintiff's knee range of motion was limited and tenderness to palpation was present. (Tr. 11, 283-284). X-rays of the left knee yielded findings consistent with severe osteoarthritis. (Tr. 11, 286-287). Dr. Sacchetti diagnosed possible degenerative arthritis of both knees and administered a corticosteroid injection to the right knee. (Tr. 11, 284). On follow-up, Dr. Sacchetti noted that Plaintiff had done "fabulously" with the injection to her right knee, and an injection was given to the left knee. (Tr. 11-12, 282). One month later, Dr. Sacchetti wrote that Plaintiff was "doing very well." She did not have any significant complaints, although her knees were still bothering her and medial joint line pain was noted. (Tr. 12, 281).

The ALJ cited Plaintiff's report of discomfort with prolonged standing and when getting up from a chair, and noted that Dr. Sacchetti prescribed an anti-inflammatory medication. (Tr. 12, 275). The ALJ observed that despite these measures, Plaintiff continued to complain of knee pain, and received three Synvisc injections in both knees.[6] (Tr. 12, 273-277). She was diagnosed with degenerative arthrosis of the knee.[7] (Tr. 12, 275). In June 2007, Plaintiff was described as doing significantly better and exhibiting full range of motion of the right knee without any tenderness to palpation. The ALJ noted that one month later, Plaintiff presented with significant complaints of right knee pain, and an examination showed significant tenderness to palpation. (Tr. 12, 269-270). Plaintiff had no complaints in August 2007, and exhibited good range of motion, stability, and strength in both knees. In May 2008, Plaintiff returned to Dr. Sacchetti with complaints of bilateral knee pain. (Tr. 12-13, 267-268). X-rays of the knees showed end-stage arthritis. Plaintiff was

---

[6] Synvisc is indicated for the treatment of pain due to osteoarthritis of the knee. *Physicians' Desk Reference* 3386 (53rd ed. 1999).

[7] Arthrosis is synonymous with osteoarthritis. *Stedman's Medical Dictionary* 151 (27th ed. 2000) (*Stedman's*).

assessed with end-stage bilateral knee arthrosis, and she was prescribed Celebrex.[8]  (Tr. 13, 266).

In June 2008, Plaintiff reported intermittent discomfort, and crepitation[8] was present on examination.  However, in October 2008, more than 3 months after her date last insured, Dr. Sacchetti remarked that Plaintiff was doing well on a new medication, had no significant complaints, and her physical examination showed good range of motion with  no significant crepitation.  (Tr. 13, 363, 365).

Treatment notes from April 2009 indicate that Plaintiff was doing well, had no significant complaints, range of motion of her knees was unremarkable, there was no sensory or motor dysfunction, and there was no instability.  (Tr. 13, 348).  Dr. Sacchetti assessed resolved exacerbation of degenerative knee arthrosis.  (Tr. 13, 348).  The ALJ noted that by June 2009, however, Plaintiff's knee symptoms had worsened and her medication was changed.  (Tr. 13, 376-377).  One month later, Plaintiff continued to have symptoms in both knees, and she reported that she was unable to stand or walk for prolonged periods of time.  (Tr. 13, 373).  Tenderness to palpation along both knees was observed as was crepitation with range of motion, and Dr. Sacchetti posited that Plaintiff's knee pain was secondary to end-stage degenerative knee arthrosis.  (Tr. 13, 374).  Plaintiff's range of motion of her lumbar spine was somewhat restricted, and Dr. Sacchetti observed paravertebral spasm.  (Tr. 13, 374).  The ALJ noted that x-rays of the lumbar spine showed

---

[8] Celebrex is indicated for the relief of the signs and symptoms of arthritis.  <www.celebrex.com> (visited April 27, 2011).

[8] The noise made by rubbing together the ends of a fractured bone. *Dorland's Illustrated Medical Dictionary* (28th ed. 1994) (*Dorland's*).

end-stage lumbar arthrosis and multiple osteophytes.[9] (Tr. 13, 374). The ALJ cited Dr. Sacchetti's assessment that Plaintiff required a total knee arthroplasty, and noted Dr. Sacchetti's opinion that Plaintiff was too young to undergo a total knee replacement.[10] (Tr. 13, 374). The ALJ also referenced Dr. Sacchetti's statement that Plaintiff had end-stage arthrosis with bone-on-bone contact of the medial joint, which could be relieved only by a total joint arthroplasty. (Tr. 13, 374).

The ALJ's recount of the medical evidence - from both before and after her date last insured – illustrates that he was aware that Plaintiff experienced periods where her knee symptoms waxed and waned. Despite Plaintiff's claim to the contrary, the ALJ's Residual Functional Capacity finding contemplated the entirety of the medical evidence and was not limited to those instances where Dr. Sacchetti found that Plaintiff was doing well. After outlining the medical evidence, the ALJ determined that Plaintiff's impairments precluded her from engaging in prolonged walking and standing and limited her to performing sedentary work. (Tr. 14). This is a finding consistent with the medical evidence as well as with Plaintiff's complaints to her treating physician.

Nothing in Dr. Sacchetti's treatment notes indicates that Plaintiff's knee impairments affected her ability to sit. While Plaintiff complained of difficulty sitting at the administrative hearing, she never made such complaints to Dr. Sacchetti or any other treating source. Rather, Plaintiff only reported difficulty with standing, walking, and rising from a chair. (Tr. 275). Neither Dr. Sacchetti nor any other treating or examining source ever indicated that Plaintiff's ability to sit was restricted by her impairments. Nothing in Dr. Sacchetti's treatment notes nor in the remainder of the record reflects that Plaintiff was unable to perform the sitting with occasional walking and

---

[9] An osteophyte is a bony outgrowth or protuberance. *Stedman's* 1285 (27th ed. 2000).

[10] Arthroplasty refers to the creation of an artificial joint to correct advanced degenerative arthritis. *Stedman's* 150 (27th ed. 2000).

standing that is required for sedentary work prior to her date last insured. 20 C.F.R.§ 404.1567(a). To the contrary, Dr. Sacchetti's treatment notes substantially support the ALJ's finding that Plaintiff retained the capacity to perform the exertional demands of sedentary work.

Plaintiff further contends that the ALJ failed to consider how her need to use an assistive device, such as a walker or cane, impacted her ability to work. Although Dr. Sacchetti wrote in his December 4, 2009 letter that Plaintiff had "used assistive devices for walking, sometimes a walker, sometimes a cane," and that the use of such devices "would be concordant with the symptoms that she is having at the time," there is no evidence that an assistive device was medically required . Plaintiff was not prescribed an assistive device by Dr. Sacchetti or any other treating or examining source.[11] (Tr. 93). Dr. Sacchetti wrote in his letter that he had treated Plaintiff with knee braces, but did not identify a walker or cane as a means of treatment. (Tr. 92). As Social Security Ruling 96-9p explains, "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." There is no such documentation in the record here.

Even if the evidence showed that an assistive device was medically required, the use of a medically required hand-held assistive device would not preclude the performance of sedentary work. See Social Security Ruling 96-9p (explaining that an individual who must use a hand-held assistive device to aid in walking or standing because of a lower extremity impairment and who has no other functional limitations may still be able to adjust to sedentary work). Plaintiff's alleged need

---

[11] Upon spraining her right ankle in a motor vehicle accident in October 2008, Dr. Sacchetti placed Plaintiff in a walker boot. (Tr. 360). The following month, it was noted that Plaintiff was using a walker boot, and she did not have any discomfort when walking. (Tr. 354). By December 2008, Plaintiff discontinued use of the boot on her own. (Tr. 352).

to utilize assistive devices would not have impacted the ALJ's finding that Plaintiff was not disabled because she could still perform sedentary work.

The ALJ's decision that Plaintiff retained the Residual Functional Capacity to perform sedentary work is supported by substantial evidence, including Dr. Sacchetti's treatment records. Plaintiff's assignment of error should be overruled.

Plaintiff next argues that the ALJ's credibility assessment of her subjective complaints is not supported by substantial evidence. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's degenerative disease of the knees, degenerative disease of the lumbar spine, and residuals of a right ankle injury – which could be expected to produce some of the symptoms claimed by Plaintiff. Accordingly, the ALJ found Plaintiff to have

9

met the first prong of the test. The ALJ then properly determined, however, that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. (Tr. 15-16).

Plaintiff asserts that the ALJ failed to consider the side effects of her medications when he determined that she retained the capacity for sedentary work. (Pl.'s Br. at 3). She also asserts that the ALJ neglected to consider her complaints of back pain. (Pl.'s Br. at 3). A review of the ALJ's decision reveals that he properly considered these factors when he assessed Plaintiff's credibility.

The ALJ recounted Plaintiff's hearing testimony about her subjective complaints, noting that she stopped working due to problems with her legs and knees. (Tr. 15, 27). Plaintiff stated that she had pain in her hands, arms, shoulders, low back, and knees. (Tr. 15, 30-31, 38). The ALJ noted that Plaintiff reportedly experienced constant pain daily, with worsening of her symptoms in cold and rainy weather. (Tr. 15, 37-38). Plaintiff relayed that she took Vicodin for pain, and she wore braces on both knees because her legs were beginning to bow. (Tr. 16, 39-40, 44). On a bad day, she indicated that she used a cane or walker to get around her house. (Tr. 15, 31). The ALJ also noted that Plaintiff's medications reportedly caused nausea and dizziness. (Tr. 15-16, 36, 38, 42).

Plaintiff's testimony as to the functional limitations imposed by her impairments was also cited by the ALJ. The ALJ referenced Plaintiff's reports that she was unable to climb the twelve stairs in her house, could walk a maximum of only three hundred feet before needing to sit, experienced stiffness in her back and legs with prolonged sitting, and could not engage in prolonged standing or walking. (Tr. 15, 29-31). As to daily activities, the ALJ recounted Plaintiff's testimony that on a typical day, she will wake up, let her dogs out, get dressed, sit on the deck for thirty minutes, and then go inside to check her sugar reading. (Tr. 15, 31-32). She would eat and talk to her mother on the telephone, and sit on the couch to watch television with her legs and knees

propped up. (Tr. 15, 32). In the evening, Plaintiff watched television and went to bed around ten o'clock. (Tr. 15, 34). The ALJ cited Plaintiff's testimony that her mother, spouse, and daughter perform the housework, and her daughter cooked supper. (Tr. 15, 33). She performed no yard work, and denied having any hobbies. (Tr. 15, 35-36). Plaintiff indicated that she could drive short distances, and her mother took her to visit her brother once or twice each month. (Tr. 15, 29-30, 35). Plaintiff tried to attend church services, but reported that she had not been to church in the past month. (Tr. 15, 35). The ALJ also noted Plaintiff's report that on some days, the pain was so severe that she stayed in bed all day. (Tr. 15, 42).

The ALJ determined that Plaintiff's subjective statements were not supported by the objective medical evidence. For example, Plaintiff complained of constant pain, but medical records show that Plaintiff experienced some periods of relief in response to treatment. (Tr. 16). The ALJ cited Dr. Sacchetti's notes in January and February 2007 that Plaintiff was doing well after receiving injections in her knees, and while Plaintiff said her knees were bothering her somewhat, she had no significant complaints. (Tr. 16, 281-282). Plaintiff was noted to be doing much better in June 2007, having no significant pain and exhibiting full range of motion. (Tr. 16, 269-270). Treatment notes from August 2007 similarly document that Plaintiff had no complaints, and had good range of motion, stability, and strength in her knees. (Tr. 16, 268). Plaintiff reported some intermittent discomfort in June 2008, but in October 2008, Dr. Sacchetti indicated that Plaintiff was doing well on her medication with no significant complaints. (Tr. 16, 266, 363, 365). Plaintiff participated in physical therapy in December 2008, but the ALJ noted that Plaintiff attended only three sessions before discontinuing therapy on her own. (Tr. 16, 314-323, 352). By April 2009, Dr. Sacchetti remarked that Plaintiff was doing very well, and he assessed resolved exacerbation of degenerative knee arthrosis. (Tr. 16, 348). The ALJ noted that Plaintiff's knee symptoms reportedly worsened

in June 2009, nearly one year after her insured status lapsed. (Tr. 16, 376-377).

As to Plaintiff's complaints of shoulder pain and upper extremity limitations, the ALJ found that they were not supported by the objective medical evidence. The ALJ noted that in January 2007, her range of motion of the shoulders, elbows, and wrists was unremarkable. In May and August 2007, Plaintiff exhibited good range of motion, stability, and strength in her shoulders, elbows, and wrists. (Tr. 16, 268, 275, 283). Plaintiff injured her right ankle in October 2008, almost four months after her insured status expired, but she was described as "doing great" by January 2009 with no residual complaints. (Tr. 16, 317, 350). At that time, Plaintiff's range of motion of her shoulders, elbows, wrists, hips, knees, and ankles was unremarkable, and there was no edema. (Tr. 16, 350). The ALJ also noted that Plaintiff reported needing an assistive device, but with the exception of using a walker boot in late 2008 after spraining her ankle, this was not supported by the medical records. (Tr. 17, 352, 354, 360).

In addition to this medical evidence, the ALJ explained that he considered the opinions of the two state agency medical consultants who reviewed the evidence of record. (Tr. 17). Those consultants found that Plaintiff retained the functional capacity to perform light work, including standing and walking between two and six hours per day. (Tr. 17, 235-242, 255-262). The ALJ rejected those opinions, however, finding that the consultants did not review the entire medical record or hear Plaintiff's testimony, which supported a finding that she was restricted to sedentary work. (Tr. 17).

When evaluating an individual's subjective complaints, the ALJ must consider all of the evidence of record, including the medical signs and laboratory findings, treatment, and opinions of medical sources. <u>Social Security Ruling</u> 96-7p. A claimant's allegations of pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence

12

of the underlying impairment." Mickles v. Shalala, 29 F.3d 918, 927 (4th Cir. 1994). In this case, the ALJ appropriately assessed Plaintiff's subjective complaints in consideration of the entire record, and properly determined that Plaintiff's subjective complaints were not wholly credible.

This credibility determination is wholly within the authority of the ALJ. Since the ALJ identified specific evidence that formed the basis for his conclusion, the decision is supported by substantial evidence and should be affirmed. Craig, 76 F.3d at 589; Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

Although the medical records establish that the Plaintiff experienced symptoms and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by her combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and Plaintiff's credibility and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #9) be **DENIED**; that Defendant's "Motion

13

for Judgment on the Pleadings" (document #11) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V.  NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same.  Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989).   Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED**.

Signed: April 29, 2011

David S. Cayer
United States Magistrate Judge